UNITED STATES DISTRICT COURT<br>
FOR THE NORTHERN DISTRICT OF ILLINOIS<br>
EASTERN DIVISION

| | |
|---|---|
| AIT WORLDWIDE LOGISTICS, INC., | |
| Plaintiff, | No. 23 CV 14616 |
| v. | Judge Manish S. Shah |
| PACIFIC COAST CONTAINER, INC. D/B/A PCC LOGISTICS, | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiff AIT Worldwide Logistics, Inc. hired defendant Pacific Coast Container, Inc. to provide freight handling services for one of AIT's customers in Washington. When PCC invoiced AIT for allegedly improper charges, AIT refused to pay PCC for the disputed services. In response, PCC took possession of AIT's cargo and demanded immediate payment. AIT paid PCC all disputed charges to avoid shipping delays, but now brings this case for breach of contract, property claims, quasi-contractual claims, and statutory consumer-fraud violations. PCC moves to dismiss all claims other than breach of contract.

## I.     Legal Standard

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "To survive a motion to dismiss, a plaintiff must plead 'only enough facts to

state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. Facts

Plaintiff AIT Worldwide Logistics, Inc. arranges global transportation of general commodities in the retail industry. [28] ¶ 6.[1] In March 2022, AIT contracted with defendant Pacific Coast Container, Inc. for freight handling services in Washington. [28] ¶¶ 7–9. PCC managed container pickups, unloaded containers, sorted merchandise, and reloaded merchandise into outbound containers for AIT's customer, TJX Companies, Inc. [28] ¶¶ 11–12.

The parties' agreement provided a list of services for which PCC could properly invoice AIT. [28] ¶ 19. PCC was required to obtain pre-approval for any additional charges. [28] ¶ 19. For undisputed charges, AIT would pay PCC within thirty day's receipt of an invoice. [28] ¶ 23. The parties agreed to work together in good faith to resolve any billing-related disputes. *Id.*

PCC sent its initial invoices to the wrong division at AIT which caused a delay in payment. [28] ¶ 26. In response to the delay, PCC stopped all work related to the contract and demanded immediate full payment. [28] ¶ 27. AIT paid in full to avoid delays in cargo shipping. [28] ¶ 28. AIT later discovered that the initial and pending

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [1] ¶ 1. The facts are taken from plaintiff's complaint, [28]. This court has jurisdiction because AIT is a citizen of Illinois, PCC is a citizen of California, and the amount in controversy is more than $75,000. [28] ¶¶ 1–3; 28 U.S.C. § 1332(a)(1). The parties agree Illinois law applies to AIT's Illinois Consumer Fraud Act and tort claims. *See* [35] at 4; [39] at 7, 12, 14.

invoices contained nearly $900,000 of allegedly invalid charges. [28] ¶¶ 29–42. AIT refused to pay PCC for the pending disputed charges and offset the previous overpayment against the pending invoices as permitted under the contract. [28] ¶ 43.

AIT terminated the parties' agreement in June 2022. [28] ¶ 46. PCC took possession of fifteen trailers filled with TJX's cargo and refused to release them unless AIT paid PCC the disputed charges. [28] ¶ 48. AIT informed PCC that it disputed the latest invoice because of improper charges and a net overpayment. [28] ¶ 49. PCC still refused to release the cargo and placed locks on the trailers, preventing AIT and its vendors from being able to access or transport the cargo. [28] ¶¶ 50–51. AIT repeatedly went to PCC's facility to pick up the trailers but was denied access. [28] ¶ 52. PCC charged AIT storage fees for the trailers while it withheld them. [28] ¶ 53. AIT offered to pay a substantial portion of the disputed amount, but PCC refused. [28] ¶ 54. AIT informed PCC that it had no legal right to possess TJX's cargo. [28] ¶ 55. PCC responded that it had a possessory lien on the cargo for unpaid warehousing and storage services. [28] ¶ 55. AIT reminded PCC that the agreement prohibited PCC from asserting any liens on any property of AIT or its customers. [28] ¶¶ 55–58.

After two weeks of attempting to resolve the issue, AIT paid PCC the amount demanded to secure the release of the shipment. [28] ¶ 59. Since then, AIT asked PCC to reimburse the invalid charges. [28] ¶ 61. AIT brings breach of contract, Illinois Consumer Fraud Act, Washington Consumer Protection Act, trespass to chattels,

conversion, money had and received, and unjust enrichment claims. [28] ¶¶ 62–115. PCC moves to dismiss all claims other than breach of contract. [35] at 1–2.

## III. Analysis

### A. Illinois Consumer Fraud Act

PCC argues that the Illinois Consumer Fraud Act claim must be dismissed because AIT's allegations establish that the events primarily and substantially occurred outside of Illinois, and AIT failed to allege a deceptive act or practice by PCC distinct from the alleged breach of contract. [35] at 4–7.

The ICFA protects consumers from "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." 815 ILCS 505/2. "Trade or commerce" are the "distribution of any services . . . directly or indirectly affecting the people of" Illinois. 815 ILCS 505/1(f). To succeed on an ICFA claim, a plaintiff must prove (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception. *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 960 (7th Cir. 2020).

The ICFA only applies to fraudulent transactions that "occur[ed] primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 185–87 (2005). "[T]here is no single formula or bright-line test for determining whether a transaction occurs within this state" and "each case must be decided on its own facts." *Id.* at 187. Several factors help determine whether a claim occurred primarily and substantially in Illinois: (1) the plaintiff's residency; (2) the defendant's place of

4

business; (3) the location of the relevant item that is the subject of the transaction; (4) the location of the plaintiff's contacts with the defendant; (5) where the contract at issue was executed; (6) the contract's choice of law provision; (7) where the allegedly deceptive act occurred; (8) where payments for services were to be sent; and (9) where complaints about the services were to be directed. *Id.* at 187–190.

Of these factors, only three favor AIT's argument: AIT is a resident of Illinois, the contract at issue was executed in Illinois, and the contract's choice of law provision selects Illinois.[2] [28] ¶ 1; [28-1] at 13.

The remaining factors point away from Illinois and outweigh the otherwise coincidental connection to Illinois. AIT sent payments to PCC, whose principal place of business is in California, and complaints about PCC's services were to be directed to California. [28] ¶¶ 2, 32, 59; [28-1] at 12. PCC's transload facility and trailer operation were in Washington, and PCC withheld the cargo in Washington. [28] ¶¶ 8, 12, 48–53. AIT contacted PCC on multiple occasions in Washington, sending drivers to PCC's facilities to pick up the cargo. [28] ¶¶ 51–52. The ICFA does not cover the conduct alleged here as it did not substantially and primarily occur in Illinois. PCC's motion to dismiss this claim is granted.

---

[2] AIT argues that the choice-of-law provision provides for application of Illinois law, implying that the ICFA should cover the alleged conduct. [39] at 8, n.6. But Illinois law can apply to the contract, while a statute does not. "[A] state's territorial limitations apply even when that state's law is selected for application by a choice-of-law provision." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 385 (7th Cir. 2003). In Illinois, a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery*, 216 Ill.2d at 184–85.

### B. Washington Consumer Protection Act

AIT also brings a claim under the Washington Consumer Protection Act. [28] at ¶¶ 74–85. PCC argues that the contractual selection of Illinois law prevents AIT from bringing a claim under Washington law.[3] [35] at 7–8. It also argues that AIT has failed to allege an unfair or deceptive practice that impacts public interest as required by the WPCA. [35] at 8–9.

### 1. Choice of Law

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300 (7th Cir. 2018). Illinois courts typically enforce a contractual choice-of-law provision unless "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Dancor Const., Inc. v. FXR Const., Inc.*, 2016 Il App (2d) 150839, ¶ 73 (quoting Restatement (Second) of Conflict of Laws § 187 (1971)).

---

[3] AIT argues that the contract's choice-of-law provision does not apply to its WCPA claim. [39] at 4–5, 5 n. 3. But "claims that are dependent upon the contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 306 (7th Cir. 2018). Claims are "contract-dependent" when "the action alleges a wrong based upon interpretation and construction of the contract" rather than "elements constituting an independent [violation]." *Id.* The WCPA allegations are inherently related to the contract. The alleged unfair acts occurred as a result of PCC's contract performance, relate to disputed charges for this performance, and raise issues related to the parties' rights under the contract. *See* [28] ¶¶ 43, 48–59, 74–78. But whether the choice-of-law provision is enforceable to preclude the WCPA claim is a different question, discussed below.

A state's public policy is best determined by looking to its constitution, legislative enactments, and judicial decisions. *Id.*, *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 389–90 (7th Cir. 2003). The WCPA's purpose, in part, is "to protect the public" from "unfair, deceptive, and fraudulent acts or practices." RCW 19.86.920. "[T]he legislature's addition of the private right to enforce RCW 19.86.020 was intended to encourage individuals to enforce the act and fight . . . unfair, deceptive, and fraudulent acts or practices." *Dix v. ICT Grp., Inc.*, 160 Wash.2d 826, 840–41 (2007) (en banc). This private right of action "is more than a means for vindicating the rights of the individual plaintiff" because the challenged act must also affect the public interest. *Id.* at 836. Enforcement of the WCPA equally vindicates "the public as a whole." *Id.*

While the statute is silent about whether such protections can be bargained away, the Washington Supreme Court "has been reluctant to allow [W]CPA rights to be waived by preinjury contract." *Saleemi v. Doctor's Associates, Inc.*, 176 Wash.2d 368, 383 (2013). For example, "[g]iven the importance of the private right of action to enforce the [W]CPA for the protection of all the citizens of the state, . . . a forum selection clause that seriously impairs a plaintiff's ability to bring suit to enforce the [W]CPA violates the public policy of this state." *Dix v. ICT Grp., Inc.*, 160 Wash.2d 826, 837 (2007) (en banc). It follows that a choice-of-law provision that precludes a plaintiff from pursuing a WCPA claim would also violate this public policy.[4] *See also*

---

[4] The forum selection clause in *Dix v. ICT Grp., Inc.* violated public policy because it left the plaintiffs with "no feasible alternative avenue for seeking relief on [their WCPA] claims." *Dix*, 160 Wash.2d at 842–43. One Washington appellate court relied on that language to find no

*Riley v. Iron Gate Self Storage*, 198 Wash.App. 692, 708–09 (2d Div. 2017) (voiding provision that precluded plaintiff from asserting a private WCPA claim as a violation of public policy); *Saleemi*, 176 Wash.2d at 383 (noting that contractual limitation on damages to below those available under the WCPA may be unenforceable, but not reaching the question). Applying the Illinois choice-of-law provision to preclude a WCPA claim would be contrary to Washington's fundamental public policy.

Washington's interest is also substantially greater than Illinois's interest in the outcome of this issue. As described above, the conduct challenged here falls outside of the ICFA's reach. *See also Morrison v. YTB Int'l, Inc.,* 649 F.3d 533, 536 (7th Cir. 2011) ("If the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law."). Washington has more interest in the outcome of this claim because the contract was performed and the allegedly unfair acts occurred there, affecting the Washington public. *See Dancor*, 2016 IL App (2d) 150839, ¶ 80 (finding New York had a greater interest because contract's performance and subject matter occurred there).

Further, if there were no choice-of-law provision, Washington law would apply to this contract. When a contract does not contain a choice-of-law provision, the "most

---

public policy violation when "the factual basis for the [W]CPA claim is the same as that in other claims" because "the plaintiff may still have a feasible alternative avenue to seek relief for the conduct." *Culinary Ventures, Ltd v. Microsoft Corp.*, 26 Wash.App.2d 396, 416 (1st Div. 2023). But *Dix* did not invalidate the clause because it precluded the plaintiffs from seeking any relief for their injuries. The clause violated public policy because it impaired the plaintiffs' ability to bring WCPA claims specifically. *Dix*, 160 Wash.2d at 837, 842–43. The public policy at issue is the "importance of the private right of action to enforce the [W]CPA for the protection of all the citizens of the state." *Dix*, 160 Wash.2d at 837. AIT's other claims would not satisfy Washington's goal to protect its citizens and vindicate public consumers as a whole.

significant contacts" test applies. *Rico Indus., Inc. v. TLC Group, Inc.*, 2018 IL App (1st) 172279, ¶ 65. Courts weigh the relative importance of the place of contracting, the place of negotiation, the place of performance, the location of the contract's subject matter, and the parties' domicile, residence, place of incorporation, or place of business to the particular issue. *Id.* (citing *Restatement (Second) of Conflict of Laws* § 188). Washington is the place of performance, and the location of the contract's subject matter. [28] ¶¶ 11–12. While the parties are incorporated and headquartered in California and Illinois, both conduct business in Washington. [28] ¶¶ 1–2, 7–8. The contract selects Illinois as the place of contracting, and the record does not disclose the place of negotiations. [28-1] at 13. But neither matters here—AIT does not allege that PCC violated the WCPA while contracting or negotiating, only during the performance of the contract. *See Restatement*, *supra,* § 188 ("These contacts are to be evaluated according to their relative importance with respect to the particular issue."). Absent a choice-of-law clause, Washington law would apply to this dispute.

Enforcement of the Illinois choice-of-law provision against a WCPA claim would be contrary to Washington's fundamental policy to protect Washington consumers over contractual limitations, Washington would be the state of applicable law absent the provision, and it has a greater interest in the determination of this issue. *See Dancor*, 2016 Il App (2d) 150839, ¶ 73. The choice-of-law provision does not foreclose AIT's WCPA claim.

### 2. *Sufficiency of Allegations*

The WCPA allows claims "against all persons who engage in unfair or deceptive acts that directly or indirectly affect the people of Washington." *Thornell v.*

*Seattle Serv. Bureau, Inc.*, 184 Wash.2d 793, 803 (2015) (en banc). Out-of-state plaintiffs may also bring claims under the WCPA for conduct occurring in Washington. *Id.* To state a WCPA claim, AIT must allege (1) an unfair or deceptive act or practice that (2) occurred in trade or commerce and (3) impacted the public interest, and (4) AIT sustained damage to business or property that was (5) caused by the unfair or deceptive act or practice. *See Young v. Toyota Motor Sales, U.S.A.*, 196 Wash.2d 310, 316 (2020). PCC argues AIT has not adequately alleged the first and third element. [35] at 8–9.

Whether a particular act or practice is "unfair or deceptive" is a question of law. *Young*, 196 Wash.2d at 317. "The universe of 'unfair' business practices is broader than, and encompasses, the universe of 'deceptive' business practices." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 51 (2009) (*en banc*). A defendant's act or practice might be unfair "if it offends public policy as established by statutes or the common law, or is unethical, oppressive, or unscrupulous." *Mellon v. Regional Trustee Servs. Corp.*, 182 Wash.App. 476, 490 (3d Div. 2014) (quoting *Klem v. Wash. Mut. Bank*, 176 Wash.2d 771, 786 (2013)).

PCC's withholding of TJX's cargo unless AIT paid disputed charges was an unfair act. According to AIT, despite the party's agreement to act in good faith to resolve billing disputes, PCC extorted it to pay the disputed charges. [28] ¶¶ 13, 48–59. AIT alleges that PCC illegally withheld the cargo, refused AIT access to it, all while charging AIT storage fees and demanding full payment. [28] ¶¶ 48–59, 74–79. Washington courts have recognized that temporary loss of use of property, through

10

an unlawful lien or denial of access, can be unfair acts under the WCPA. *See, e.g., Mason v. Mortgage America*, Inc., 114 Wash.2d 842, 845–55 (1990) (en banc) (lender, in violation of its agreement with a borrower, wrongfully acquired title to the borrower's real property); *Webb v. Ray*, 38 Wash.App. 675, 679–680 (3d Div.1984) (defendant unlawfully asserted a possessory lien over plaintiff's car); *Ocean Beauty Seafoods LLC v. Captain Alaska*, 603 F.Supp.3d 1005, 1009, 1013 (W.D. Wash. 2022) (denying dismissal of claim based on defendant's refusal to allow plaintiff access to vessel and property while charging a storage fee). Taking AIT's allegations as true, AIT has alleged an unfair act under the WCPA.

An unfair act must also be injurious to the public interest to be actionable. RCW 19.86.093. Ordinarily, a breach of a private contract affecting only the contracting parties does not affect the public interest. *Behnke v. Ahrens*, 172 Wash.App. 281, 293 (1st Div. 2012) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 790 (1986) (*en banc*)). But when there is a likelihood that other persons have been or will be similarly injured, a private dispute may affect the public interest. *Rhodes v. Rains*, 195 Wash.App. 235, 247 (1st Div. 2016) (citing *Hangman*, 105 Wash.2d at 790). Factors indicating a likelihood for repeated harm affecting public interest include whether the alleged acts were committed in the course of the defendant's business; whether the defendant advertised to public in general; whether the defendant actively solicited the plaintiff, indicating potential solicitation of others; and whether the plaintiff and the defendant occupied unequal bargaining positions. *Id.*

11

AIT alleges that PCC's unfair actions also injured TJX and may injure others in the future. [28] ¶¶ 79–80, 84. The actions were committed during PCC's business. [28] ¶¶ 7–9, 12, 78. AIT does not allege that PCC actively solicited it, but PCC advertised to the public by operating "a public-facing website." [28] ¶ 82. While the parties had equal bargaining power when negotiating their contract, AIT alleges that its bargaining power was substantially diminished when PCC took AIT's shipments hostage. [28] ¶ 83. PCC refused to resolve the issues with AIT in good faith and refused to release the cargo unless it received the full payments. [28] ¶¶ 49–61. AIT had no choice other than pay PCC's demanded "ransom." [28] ¶ 83.

Viewing the allegations in the light most favorable to AIT, there is a likelihood that others have been or will be injured in the same manner. PCC's motion to dismiss AIT's WCPA claim is denied.

### C.    Trespass to Chattels & Conversion

PCC argues that the economic-loss rule bars AIT's claims for trespass to chattels and conversion. [35] at 9–10. "Known as the *Moorman* doctrine in Illinois, this doctrine bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). "Economic loss" includes "damages for inadequate value, costs of repair and replacement, . . . or consequential loss of profits—without any claim of personal injury or damage to other property." *Moorman Mfg. Co. v. Nat'l Tank Co.*,

91 Ill.2d 69, 82 (1982). The doctrine also applies to contracts for services. *Avery v. GRI Fox Run, LLC*, 2020 IL App (2d) 190382, ¶ 55.[5]

There are three exceptions to the doctrine: (1) when the plaintiff sustained damage resulting from a sudden or dangerous occurrence; (2) when a defendant's intentional, false representation caused plaintiff's damages; and (3) when the plaintiff's damages were caused by a negligent misrepresentation by a defendant in the business of providing guidance. *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011). All three "exceptions have in common an extra-contractual duty between the parties, giving rise to a cause of action in tort separate from one based on the contract itself." *Id.* "Put another way, if a plaintiff claims that a defendant breached an obligation other than a contractual obligation, the *Moorman* doctrine does not apply." *Toll Processing Servs., LLC v. Kastalon, Inc.*, 880 F.3d 820, 827 (7th Cir. 2018).

The applicability of the economic loss doctrine to conversion and trespass to chattels claims depends on the source of the duty breached. Such claims may not proceed where the duty to the plaintiff arises from the contract. *See, e.g., Meadoworks,*

---

[5] AIT argues that the damages stemming from PCC's conversion and trespass to chattels, particularly the storage fees for the withheld trailers, are not "economic losses." [39] at 14. These damages stem from PCC's alleged breach of the contract's prohibition on liens, thus are economic losses under the doctrine. *See, e.g., Meadoworks, LLC v. Linear Mold & Eng'g, LLC*, No. 1:19-CV-7896, 2020 WL 5365977, at *2 (N.D. Ill. Sept. 8, 2020) (collecting cases barring conversion claims for damages arising from contractual breaches); *compare Vanco US, LLC v. Brink's Inc.*, 2010 WL 5365373, at *6 (N.D. Ill. Dec. 14, 2010) (finding damages from theft between contracting parties, unrelated to any contractual dispute, were not purely economic losses arising out of breach of contract). The *Moorman* doctrine "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod*, 673 F.3d at 567.

13

*LLC v. Linear Mold & Eng'g, LLC*, 2020 WL 4194211, at *4 (N.D. Ill. Jul. 21, 2020); *Kravetz v. Bridge to Life, Ltd.*, 2017 WL 4074016, at *3–4 (N.D. Ill. Sept. 14, 2017); *St. George Invs. LLC v. QuamTel, Inc.*, 2014 WL 812157, at *9–10 (N.D. Ill. Mar. 3, 2014) (collecting cases). But if the contract did not contemplate the situation in which the claim arose and the breached duty arose from an outside source, then the *Moorman* doctrine would not stand in the way of the claims. *Toll Processing*, 880 F.3d at 827.

AIT's trespass to chattels and conversion claims are based on a contractual duty. AIT incorporates its breach-of-contract allegations by reference in these claims. [28] ¶¶ 86, 95. AIT alleges that PCC breached the contract by "asserting or attempting to assert a possessory lien on TJX's cargo, in violation of Section 9 of the Agreement; . . . by wrongfully holding AIT's shipments and coercing AIT to pay the disputed charges using extortionary tactics, in violation of Section 8.b of the Agreement; and . . . by holding AIT's shipments in order to extort AIT into paying the wrongful charges." [28] ¶ 64. The alleged conduct is not independent of the contract. *See* [28] ¶¶ 90, 99.

AIT argues that its claims survive because PCC had a duty independent of the agreement to return the goods to AIT. [39] at 13. There is a common-law duty not to convert another's property. *In re Karavidas*, 2013 IL 115767, ¶¶ 59–60. But AIT and PCC's "contract sets out the duties between the parties, [thus] recovery should be limited to contract damages, even though recovery in tort would otherwise be

14

available under the common law." *See R.J. O'Brien & Assocs., Inc. v. Forman*, 298 F.3d 653, 657 (7th Cir. 2002).

AIT does not explain why the allegations supporting its conversion and trespass to chattels claims do not flow from a duty under its contract with PCC.[6] AIT's conversion and trespass to chattels claims are barred by the economic loss doctrine. PCC's motion to dismiss these claims is granted.

### D.   Money Had and Received & Unjust Enrichment

PCC seeks dismissal of AIT's money had and received and unjust enrichment claims on the grounds that a plaintiff may not pursue quasi-contractual claims when there is an enforceable, express contract between the parties. [35] at 11–12. PCC is correct that recovery for such claims is unavailable where the conduct at issue is subject to an express contract. *Keck Garrett & Assocs., Inc. v. Nextel Comms., Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) ("Illinois law does not permit a party to recover on a theory of quasi-contract when an actual contract governs the parties' relations on that issue.").

---

[6] AIT argues that PCC's conversion and trespass to chattels occurred after the termination of the parties' contract, and thus, any duty could not have arisen from the contract. [39] at 13–14. At the same time, AIT emphasizes that PCC had no legal right to withhold the cargo because of the contractual prohibition on liens. [28] ¶¶ 56, 64, 90, 99. PCC withheld the cargo based on AIT's refusal to pay disputed charges under the contract and then released the cargo upon payment. [28] ¶¶ 48, 59. Despite the contract being terminated, PCC's alleged conduct was not extra-contractual. *Compare Dyson, Inc. v. Syncreon Tech. (America), Inc.*, 2019 WL 3037075, at *1, 6–7 (N.D. Ill. July 11, 2019) (holding a jury could find conduct, unrelated to existing contractual duties and an attempt to coerce plaintiff to accept a new contract, violated an extra-contractual duty to not convert if the existing contract was terminated at time of conversion).

A party is permitted to plead for quasi-contractual relief in the alternative to a breach of contract claim. *Cromeens*, 349 F.3d at 397. If a valid contract is found to exist, quasi-contractual relief is no longer available. *Id.*

Plaintiffs may not "incorporate by reference allegations of the existence of a valid contract between the parties [in quasi-contractual claims] because this would seek relief that Illinois does not offer." *Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023). But a plaintiff may incorporate contractual allegations if the quasi-contractual claim "is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim." *Id.* at 672. While this "round-about way of resolving the pleading issue certainly is not a model to be emulated . . . this language is sufficient under Rule 8—even if barely so—to ensure that [a plaintiff] is not entering the forbidden territory of asserting the existence of an enforceable contract as a component of" a quasi-contractual claim. *Id.* (citing *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (federal pleading rules are designed to "discourage battles over mere form of statement" and "to avoid civil cases turning on technicalities.")).

AIT's claims as pled are not entirely premised on extra-contractual conduct. *See, e.g.*, [28] ¶¶ 34, 36–37, 48, 104, 111–12, 115. But AIT pleads its unjust enrichment and money had and received claims "in the alternative to [its] first claim for relief [breach of contract]." [28] at 17, 18. And it alleges that "[i]f no express agreement existed between the parties, which AIT denies, then AIT is alternatively entitled to be reimbursed." [28] ¶¶ 110, 115.

Accordingly, PCC's motion to dismiss AIT's money had and received and unjust enrichment claims is denied, but those theories are only available if no contract governs the parties' relationship.

## IV. Conclusion

Defendant's motion to dismiss plaintiff's Illinois Consumer Fraud Act, trespass to chattels, and conversion claims is granted. Defendant's motion to dismiss is denied as to plaintiff's Washington Consumer Protection Act, money had and received, and unjust enrichment claims.

ENTER:

Manish S. Shah
United States District Judge

Date: September 4, 2024